FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

04 JUN 16 AM 9:09

GARY D. McFARLAND
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

REGINALD YOUNG, Director, Omaha )
Human Relations Department on behalf of )
THEARDISE LOWMAN, and )
THEARDISE LOWMAN, individually, )
)
                                             )       8:02CV302
               Plaintiffs,         )
)         **ORDER**
)
vs. )
)
BRACSTON L. OLDS, MYRTIS E. OLDS, )
and B.L.'S HOMES, )
)
               Defendants. )

This matter is before the court on the defendants' motion for summary judgment (Filing No. 46). The defendants filed a brief (Filing No. 47), an index of evidence (Filing No. 48), and a reply brief (Filing No. 53) in support of the motion. The plaintiffs filed a brief (Filing No. 51) and an index of evidence (Filing No. 52) in opposition to the motion. For the reasons set forth below, the defendants' motion for summary judgment is denied.

## I.   BACKGROUND

Bracston and Myrtis Olds (defendants) own a house at 4919 California Street in Omaha that has been converted into apartments. Theardise Lowman (Lowman), a black man, and his girlfriend, Theresa Peters (Peters), inquired about renting the apartment (Ex. C at 11:11-15, 12:2-9; Ex. AA at 48:10-11). After the two viewed the apartment, Bracston Olds led them through the application process, including payment of a $20 fee to run a credit check through Tenant Data Services (Ex. C at 14:19-15:2; Ex. D at 23:21-25:4; Ex. E at 16:18-17:21). Tenant Data Services reported Lowman's "national risk score" was 655, which means there was a 65% chance Lowman would be late in paying rent or not pay at all (Ex. B at ¶¶ 5-6; Ex. E at 17:11-18:18). Two to three weeks after applying, Lowman and Peters were informed the application for rental was not accepted, based on the score from the credit check and a phone call from Lowman's previous landlord (Ex C. at 17:18-18:11; Ex. F at 19:9-21).

The defendants state Lowman's risk score was far higher than the defendants' alleged acceptable limit, 400, which was a 40% chance of slow payment or nonpayment, although the defendants do not have a set number as to what is an acceptable risk (Ex. E at 20:10-25; Ex. F at 18:23-19:4). The defendants show the national risk scores for other tenants were 102 (10%), 93 (9.3%), and 40 (4%), all low risks of slow payment or nonpayment (Ex. B at ¶¶ 2-4). The defendants claim to employ a set of policies for evaluating rental applications, including making an appointment for the potential applicant to view the property, informing them of the $20 fee for the credit check, showing the apartment, completion of a rental application, running the credit check, and deciding whether to accept or deny the application and informing the applicant (Ex. F at 8:14-11:14; Ex. E at 14:18-16:6). The defendants claim the credit report is "an integral part of determining" an applicant's creditworthiness (Ex. AA at 29:16-17). The defendants handle only one application at a time (Ex. E at 34:10-35:12), and have never rented to a black tenant (Ex. AA at 48:14-18; Ex. BB at 26:23-25).

Darci Leierer (Leierer), an eighteen-year-old white female, applied to rent the apartment after Lowman was turned down (Ex. AA at 46:2-4). Leierer was planning to attend college at the University of Nebraska at Omaha (UNO) and was not employed (Id. 39:2-5; 40:16-19). Leierer did not have a checking account or credit references, and the defendants did not run a credit report on her at the time of her application, allegedly because Leierer told the defendants her parents and grandmother would be paying the rent (Ex. AA at 39:9-23, 41:14-17; Ex. BB at 23:3-4, 24:9-16), and because Leierer was a young person starting college and she was from a small Nebraska farm community (Ex. AA at 44:4-16, 47:8-22). The defendants did not confirm Leierer was registered at UNO, did not get written verification the parents or grandmother would actually pay the rent, and did not run a credit check on the parents or grandmother (Ex. AA at 47:23-48:6, 45:13-15; Ex. BB at 25:8-11, 24:20-22). Regardless, the defendants felt Leierer was an acceptable risk and made the decision to rent to her before requiring her to have a co-signer on the lease (Ex. AA at 44:4-16, 46:22-47:12; Ex. BB at 25:12-17).

Lowman and Reginald Young (Young), the director of the Omaha Human Relations Department, filed suit against the defendants on June 27, 2002. The plaintiffs allege violations of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3631 (2000), and the Civil Rights Statutes of 1866, 42 U.S.C. § 1982, seeking compensatory and punitive damages and injunctive relief.

## II. DISCUSSION

Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). When the motion for summary judgment has been made and supported according to Rule 56, the opposing party may not rest upon just the allegations or denials of its pleadings but must, by affidavit or otherwise, "set forth specific facts showing . . . there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"[S]uits involving alleged discrimination in housing are frequently brought under both the Fair Housing Act of 1968 and 42 U.S.C. § 1982." Marek v. Chesny, 473 U.S. 1, 24-25 (1985) (Brennan, J., dissenting). "The proof necessary to establish a prima facie case under the FHA also establishes a prima facie case of racial discrimination under § 1982." Asbury v. Brougham, 866 F.2d 1276, 1279 (10th Cir. 1989).

In United States v. Badgett, 976 F.2d 1176, 1178 (8th Cir.1992), the Eighth Circuit ruled the three-part burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies when evaluating claims of discrimination under the FHA. Under this test, a plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff establishes this prima facie case, the burden shifts to the defendant to prove its actions were motivated by legitimate nondiscriminatory reasons. If the defendant meets this burden, the burden shifts back to the plaintiff to prove the legitimate reasons the defendant asserted are in fact mere pretext for discrimination. McDonnell Douglas Corp., 411 U.S. at 802-05; Badgett, 976 F.2d at 1178.

3

To establish a prima facie case under the FHA and section 1982, the plaintiffs must show (1) Lowman is a member of a protected class; (2) Lowman applied for and was qualified to rent from the defendants; (3) the defendants rejected Lowman despite his qualifications; and (4) the rental property remained available after Lowman's application was rejected. Rowe v. Union Planters Bank of Southeast Mo., 289 F.3d 533, 535 (8th Cir. 2002); Asbury, 866 F.2d at 1279-80.

The defendants concede that Lowman is a member of a protected class, but contend the plaintiffs cannot establish the remaining elements. However, the defendants only present argument on the "qualification" element, claiming the three remaining elements all depend on Lowman's qualifications. There is no dispute the defendants refused to rent to Lowman. There is also no dispute the apartment remained available after Lowman was rejected. Accordingly, the prima facie case hinges on whether Lowman was qualified to rent the apartment.

As to the qualifications, the court concludes genuine issues of material fact remain as to whether Lowman was qualified to rent from the defendants. The defendants rejected Lowman, claiming it was based upon his credit score. However, the defendants failed to require all persons who rented from them to submit to a credit check which, as noted below, could also show the pretextual nature of the defendants' actions. Further, the qualifications the defendants claim to require for all renters may or may not exist. The defendants claim to base their decisions to rent on credit scores. The defendants claim the credit report had become an integral part of their determination of an applicant's creditworthiness. However, the defendants do not have an express or even a specific credit score number they require of applicants. On the other hand, the defendants contend the above-listed requirements were their policy with regard to rentals. The evidence before the court shows the defendants strictly adhered to this alleged policy when a middle-aged, black man applied, but not when a young, white female applied. No credit check was run on Leierer, her parents, or her grandmother. Based on the evidence submitted, the court cannot determine whether Lowman was qualified to rent from the defendants. Also, issues of material fact remain as to whether the qualifications upon which the defendants claim

they base their decisions are legitimate or are only a vague and subjective set of criteria masking racially motivated discrimination in renting the property. The plaintiffs have established their prima facie case.

At the same time, the defendants have presented evidence of a legitimate, non-discriminatory reason for their decision–that Lowman had a poor credit rating–which requires no further discussion from the court. Thus, the burden shifts back to the plaintiffs to present evidence the defendants' asserted reason for denying Lowman's application was merely a pretext for racial discrimination. Again, as noted above in reference to the plaintiffs' prima facie case, the evidence before the court shows the defendants closely followed their unwritten policy of requiring a credit check and credit rating of less than 400 (40%) when a black man applied for housing, but dismissed such formalities when a young, white woman applied. The plaintiffs have presented sufficient evidence to demonstrate a genuine issue of material fact whether the defendants' reasons for not renting to Lowman, i.e., Lowman's poor credit rating, is not legitimate, is racially discriminatory, and is pretextual. Accordingly,

**IT IS THEREFORE ORDERED:**

The defendants' motion for summary judgment (Filing No. 46) is denied.

DATED this 16th day of June, 2004.

BY THE COURT:

William Jay Riley
United States Circuit Judge
(Sitting by Designation)